```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
KINGVISION PAY-PER-VIEW, LTD.
as Broadcast Licensee of the MAY 14, 2005
WRIGHT/TRINIDAD Program,

                         Plaintiff,              REPORT AND
                                                 RECOMMENDATION
           -against-                             06-CV-1266 (CBA)

GILBERT ECHEVERRIA, Individually and as an Officer,
Director, Shareholder, and/or Principal of Xtreme Barber Shop
Inc., and XTREME BARBER SHOP INC., d/b/a Xtreme Cuts,
a/k/a Xtreme Barbershop, a/k/a Xtreme Cuts Barber Shop,

                         Defendants.
-------------------------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

## Introduction

Plaintiff, Kingvision Pay-Per-View, Ltd. ("Kingvision"), brings this action alleging that defendants, Gilbert Echeverria, individually and as an officer, director, shareholder, and/or principal of Xtreme Barber Shop Inc. ("Xtreme"), and Xtreme, unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on May 14, 2005 between Wright and Trinidad (the "event") in violation of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 1, 18-21, 32-35. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, and displayed it to individuals at Xtreme. *Id*.

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered the default of defendants on June 14, 2006, and the Honorable Carol B. Amon referred this case to me for report and recommendation on the issue of damages as to the defaulting defendants. Docket Entry 8 and Order dated June 19, 2006.

**Facts**

Kingvision owns the distribution rights to the event, which was broadcast via closed circuit television and encrypted satellite signal on May 14, 2005. Compl. ¶ 15; Affidavit of Donna K. Westrich, Vice-President of Kingvision ("Westrich Aff.") ¶ 3. Plaintiff entered into agreements with various commercial establishments in New York, allowing them to exhibit the event to their patrons in exchange for a fee. Compl. ¶¶ 16, 17; Westrich Aff. ¶ 3. Defendants did not contract with plaintiff to legally broadcast the event. Westrich Aff. ¶ 6.

Plaintiff hired an investigative agency, Signal Auditing, Inc., to visit various commercial establishments in the New York City area on the night of May 14, 2005, to identify establishments that unlawfully exhibited the event. *Id*. at ¶ 4. An investigator witnessed the event being displayed on a television set at Xtreme. Westrich Aff. ¶ 7; Piracy Affidavit of Sean McGrory ("McGrory Aff."), Westrich Aff. Ex. D. Plaintiff asserts that defendants used unauthorized decoding equipment to intercept the event without paying a fee to plaintiff. Compl. ¶¶ 18, 19, 34; Westrich Aff. ¶ 10.

**Discussion**

A. <u>Liability</u>

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). The allegations of plaintiff's complaint clearly establish the elements of liability required to state a claim under 47 U.S.C. § 605(a).

Section 605(a) provides that "[n]o person not being authorized by the sender shall

intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In the Second Circuit, Section 605(a), which by its express terms prohibits unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio or satellite communication. *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). *Cf. TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) (holding that Section 605 applies only to theft of satellite broadcasts intercepted prior to distribution over a cable system). Plaintiff alleges that its cable transmissions are in fact derived from satellite communications and that defendants may have used one of the following methods to intercept the satellite broadcast: use of an illegal satellite receiver, misrepresentation of a commercial establishment as a residence, use of an illegal decryption device, or an illegal purchase of satellite authorization codes. Compl. ¶¶ 15, 18, 19; Westrich Aff. ¶ 10. Thus, Kingvision has properly pleaded a claim that defendants illegally intercepted plaintiff's satellite communication in violation of Section 605(a) and defendants are liable to plaintiff.[1]

---

[1] Plaintiff also pleads violations of 47 U.S.C. § 605(e)(4) and 47 U.S.C. § 553. Compl. ¶¶ 29, 35. In its memorandum of law in support of damages, however, plaintiff argues for an award only pursuant to § 605(a). Pl. Mem. pp. 6-9. In any event, where liability has been established under §§ 553(a)(1) and 605(a) of the Communications Act, recovery under both sections is impermissible. *See New Contenders, Inc. v. Diaz Seafood Corp.*, 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept 2, 1997). Rather, a court should award damages pursuant to § 605 because it provides for greater recovery than § 553. *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993).

B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. In this case, defendants have not submitted any opposition to plaintiff's demand for an award of statutory damages. Accordingly, a hearing is not warranted.

A claimant who has established liability under § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff in this case seeks an award of statutory damages, including an enhanced award based on defendant's willfulness, and attorneys' fees and costs. Pl. Mem. pp. 6-12.

The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just");

*see also Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). A common method courts use to determine an appropriate damages award is to assess a per person charge based upon the number of individuals in the establishment at the time of the broadcast. *See*, *e.g.*, *id.* (awarding damages on a per patron basis); *Cablevision Sys. Corp. v. 45 Midland Enters., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). Plaintiff has submitted evidence that approximately 25 individuals were present during the illegal broadcast.[2] McGrory Aff. Furthermore, plaintiff states that the residential price for the broadcast was $25 or $50. Westrich Aff. ¶ 10. I recommend that plaintiff be awarded $50 per individual present at Xtreme during the broadcast. *See*, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 514 (E.D.N.Y. 2006) (awarding $50 per patron); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same); *45 Midland Enters.*, 858 F. Supp. at 45 (same). Accordingly, damages should be awarded in the amount of $1,250.

Plaintiff also seeks an enhanced damages award pursuant to § 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed for financial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27, 105 S. Ct. 613, 624 (1985) (*quoted in Cablevision v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act. . . ."); *Time Warner Cable*

---

[2] Plaintiff's investigator took 3 separate head counts during the 15 minutes that he was in Xtreme. McGrory Aff. He counted 25 people on the first count and 23 people on the subsequent 2 counts. *Id*.

5

*of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). *See also* Westrich Aff. ¶ 10.

Plaintiff's showing that defendants' acts were committed for commercial advantage or financial gain is not particularly strong. Plaintiff's boilerplate allegations that the broadcast of the event "most likely led to an increased number of patrons and, thus, an increase in profits" is not substantiated by any evidence. Pl. Mem. p. 3. *See also* McGrory Aff. In fact, the investigator's report contradicts plaintiff's assertion that defendants' actions were financially motivated. First, the investigator's report does not indicate that Xtreme was doing business at the time of the broadcast, which was approximately midnight. *Id*. Indeed, the investigator's photograph of the establishment on the night in question indicates that the barber shop's sign was not illuminated and suggests that the shop was not open for its usual business. *Id*. Additionally, the report does not indicate that defendants received any money as a result of the illegal broadcast. *Id*. The investigator did not pay any cover charge to enter, and unlike restaurants that show pirated broadcasts and profit from serving food and drinks, the investigator's report here contains no indication that defendants charged for any food or drinks that may have been available at the barber shop. *Id*. In sum, plaintiff has failed to establish that the defendants profited at all or derived any revenue by showing the event.

Nonetheless, the legislative history of § 605 states that Congress "intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly." 130 Cong. Rec. § 14286 (daily ed. Oct. 11, 1986) (statement of Sen. Packwood), *reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497. I therefore conclude that, because the event was

shown in a commercial premises to a fairly large group of people, a modest award of enhanced damages would be proper.

Courts use a variety of factors in determining whether and to what extent a defendant's willful conduct justifies enhanced damages. These factors include: (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. *Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc.*, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

None of the factors are present in this case. Although plaintiff alleges that it "has in its files" evidence that defendants pirated another of Kingvision's boxing matches on a separate occasion, Pl. Mem. pp. 3, 8, I do not find that persuasive basis for a substantial award of enhanced damages for several reasons. First, I note that plaintiff has failed to provide any of its evidence of the additional act of piracy it alleges. Second, plaintiff has apparently filed a separate action in connection with this other act of piracy. *See J&J Sports Productions, Inc. v. Echeverria*, 06-CV-2894 (NG)(RML) (E.D.N.Y.). Defendants' violation in this case was the first in time, and plaintiff may seek an enhancement in this second case for defendants' repeated violation. Moreover, defendants' subsequent violation occurred only two weeks after this violation and only two individuals were present during the second pirated broadcast. Pl. Mem. p. 3. Lastly, I note that plaintiff contradicts itself in its own papers, stating at one point that plaintiff does not have any evidence of additional acts of piracy by Xtreme. *See* Pl. Mem. p. 5. With respect to the second factor, plaintiff's actual damages, they amount only to approximately $512.50 ($12.50 per person based on an estimated maximum fire code occupancy of 25 plus a

7

$200 DirecTV fee), the amount it could have charged defendants for a licensing fee to broadcast the event at Xtreme.  *See* Weistrich Aff., Ex. B.

Taking all of these factors into account, I recommend that plaintiff be awarded an enhancement of three times the damages award, or $3,750.  *See J&J Sports Prods., Inc. v. Drake*, 2006 WL 2927163 (E.D.N.Y. Oct. 11, 2006) (awarding a factor of three times for willfulness against a barber shop), *Kingvision Pay-Per-View, Ltd. v. Hansen*, 2004 WL 744230 (S.D.N.Y. Apr. 5, 2004) (awarding a factor of five times for willfulness against a barber shop); *Entm't by J&J, Inc. v. AJ's Barber Shop & Unisex Salon*, 2003 U.S. Dist. LEXIS 22492 () (awarding a factor of two and a half times for willfulness); *Top Rank, Inc. v. Ortiz*, 2003 WL 1960211 (S.D.N.Y. Mar. 27, 2003) (awarding double damages for willfulness); *but see J & J Sports Prods., Inc. v. Vasquez*, 2006 WL 2583740, at *5 (E.D.N.Y. Sept. 7, 2006) (declining to award any statutory enhancement where the broadcast occurred in a barber shop with only four individuals present and there was no evidence of any financial gain).  This amount is sufficient to both redress the harm caused by defendants' activities, as well as to deter future violations, particularly where, as here, there is no indication that defendants received any financial gain as a result of the illegal broadcast.

C.     Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs.  An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).  In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done."  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Plaintiff seeks to recover $924 in attorney's

fees for 3.87 hours of attorney work and 2.00 hours of paralegal work. This amount appears to be reasonable and is supported by contemporaneous time records. Lonstein Aff. ¶ 4.

Finally, plaintiff seeks to recover costs in the amount of $900, including $250 for the filing fee, $200 for service, and $450 for investigative costs. Lonstein Aff. ¶ 3. Plaintiff is entitled to recover the costs associated with filing and service. *See Kingvision v. Autur*, 426 F. Supp. 2d 59, 66 (E.D.N.Y. 2006). Courts are divided over whether the costs of an investigator are recoverable pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). *Compare Autar*, 426 F. Supp. 2d at 66-68 *with Kingvision Pay-Per-View Ltd. v. Cazares*, 2006 WL 2086031 at * 6, (E.D.N.Y. July 25, 2006), *and Drake,* 2006 WL 2927163 at * 7. While I find the analysis in *Autar* to be persuasive, I need not decide the issue for purposes of this case because plaintiff's showing in support of its application for investigative costs is inadequate. "In order to recover investigative costs a plaintiff must make a showing similar to that requires to recover attorneys' fees." *Autar*, 426 F. Supp. 2d at 67. Here, plaintiff seeks to recover $450 it claims to have paid to its investigator, but the investigator states in his affidavit that he spent only 15 minutes at the bar. McGrory Aff. Plaintiff offers no rationale for an award of $450 for 15 minutes of investigative work. I therefore recommend that this aspect of plaintiff's claim for fees and costs be rejected. *Autur*, 426 F. Supp. 2d at 67; *Vasquez*, 2006 WL 2583740, at *6; *Int'l Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 917-18 (W.D.N.Y. 1997).

## **Conclusion**

For the foregoing reasons, I respectfully recommend that default judgments be entered against the defendants, jointly and severally, in the total amount of $6,374, consisting of $5,000 in statutory damages and $1,374 in fees and costs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Carol B. Amon within ten days of receiving this Report and Recommendation and, in any event, on or before February 21, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Clerk of the Court.

_____
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**February 5, 2007**

*U:\eoc 2007\Damages Inquests\kingvision v echeverria 020207.wpd*